FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 22, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELVIN N.,[1]<br><br>        Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>        Defendant. | No. 1:24-CV-03084-MKD<br><br>ORDER AFFIRMING DECISION OF COMMISSIONER<br><br>**ECF Nos. 8, 9** |

---

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' briefs. ECF Nos. 8, 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court affirms the Commissioner's decision.

## JURISDICTION

Plaintiff filed an application for benefits on April 17, 2020, alleging disability beginning October 1, 2018. Tr. 426-32. The application was denied initially and upon reconsideration. Tr. 204-34. An Administrative Law Judge (ALJ) held a hearing on July 16, 2021. Tr. 62-89. The ALJ issued an unfavorable decision on July 28, 2021. Tr. 235-54. The Appeals Council remanded the matter on November 4, 2022. Tr. 255-61. A different ALJ held a hearing on October 24, 2023, Tr. 90-127, and issued an unfavorable decision on November 28, 2023. Tr. 18-37. The Appeals Council denied review on April 19, 2024. Tr. 1-7. Plaintiff appealed this final decision of the Commissioner on June 5, 2024. ECF No. 1. The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

ORDER - 2

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER - 3

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

ORDER - 4

from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

ORDER - 5

capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER - 6

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2019, had not engaged in substantial gainful activity from the alleged onset date of October 1, 2018, through June 30, 2019. Tr. 24. At step two, the ALJ found that Plaintiff had the following severe impairments: depressive disorder; bipolar disorder; and posttraumatic stress disorder. Tr. 24.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24-25. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work with the following limitations:

> [H]e was limited to simple routine task work; he could have superficial and occasional interaction with the general public; he could work in the same room with coworkers but he should not work in coordination with coworkers; he could have interacted occasionally with supervisors; and he could adapt to simple, occasional workplace changes.

Tr. 26.

At step four, the ALJ found Plaintiff could have performed his past relevant work as a sorter, agricultural produce. Tr. 31. Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as janitor and dry cleaner helper. Tr. 32. Therefore, the ALJ concluded Plaintiff was not under a

ORDER - 7

disability, as defined in the Social Security Act, from the alleged onset date of October 1, 2018, through June 30, 2019. Tr. 32.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

    1. Whether the ALJ properly evaluated the medical opinion evidence;

    2. Whether the ALJ properly evaluated Plaintiff's testimony;

    3. Whether the ALJ properly evaluated lay witness evidence;

    4. Whether the ALJ erred at step four; and

    5. Whether the ALJ conducted a proper step five analysis.

ECF No. 8 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017

ORDER - 8

WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

ORDER - 9

persuasive the medical opinions or prior administrative medical finding(s) will be.

*Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id*.  The Court reasoned the "relationship

ORDER - 10

factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 792. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

Plaintiff argues the ALJ improperly discounted two medical opinions. ECF No. 8 at 12-18

### 1. Brett Wenger, LMHC

Mr. Wenger, Plaintiff's treating mental health counselor, authored a mental source statement dated June 15, 2021, opining, in relevant part, that Plaintiff would be off-task at least 30% during a 40-hour workweek and would miss at least four days per month if attempting to work a 40-hour workweek. Tr. 971. The ALJ found Mr. Wenger's opinion not persuasive. Tr. 28.

Among other reasons, the ALJ discounted Mr. Wenger's opinion as internally inconsistent: "[H]is opinion that [Plaintiff] would have marked limitations with significant difficulty remaining on task or maintaining attendance

ORDER - 11

is not entirely consistent with his own treatment notes that frequently show appropriate behavior; intact cognition with normal memory and concentration; and do not suggest that [Plaintiff] had difficulty attending his appointments[.]" Tr. 28 (citations omitted).  This finding is legally sound, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may discount a doctor's opinion when it is inconsistent with or unsupported by the doctor's own clinical findings), and substantial evidence supports it, *see, e.g.*, Tr. 691 (October 18, 2018, treatment note indicating, among other things, unremarkable mood/affect, thought process/orientation, behavior/functioning, and medical condition); Tr. 695-96 (October 25, 2018, mental status examination indicating, among other things, Plaintiff's attention span and concentration, and thought process/content and cognition were within normal limits); Tr. 741-72 (January 28, 2019, mental status examination indicating the same); Tr. 869-70 (January 9, 2020, treatment note indicating, among other things, unremarkable mood/affect, thought process/orientation, behavior/functioning, and medical condition, and that Plaintiff was "fully oriented in all spheres; with logical thought process and normal associations"); Tr. 880 (March 12, 2020, mental status examination indicating, among other things, "alert" and "oriented" and "[m]emory, cognition, fund of knowledge grossly intact"); Tr. 910 (May 18, 2020, mental status examination

ORDER - 12

indicating the same). The ALJ thus did not err by discounting the opinion on this ground.

Because the ALJ gave a valid reason, supported by substantial evidence, to discount the opinion, the Court need not address the balance of the ALJ's remaining reasons for discounting the opinion. Any inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

   2. *Tasmyn Bowes, Ph.D.*

Dr. Bowes examined Plaintiff on February 23, 2018, conducting a clinical interview and performing a mental status evaluation. Tr. 615-28. Dr. Bowes assessed the severity of Plaintiff's mental impairments as "marked" and opined, among other things, Plaintiff was markedly limited in communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, completing a normal workday and workweek without interruptions from psychologically based symptoms, and setting realistic goals and planning independently. Tr. 619. The ALJ found the opinion not persuasive. Tr. 29.

Among other reasons, the ALJ discounted the opinion on the same ground used to discount Mr. Wenger's opinion, as discussed above. Tr. 28-29; *see* Tr. 28. For the reasons discussed above, the ALJ did not err by discounting the opinion on this ground. The ALJ also properly discounted the opinion on the ground it "relates

ORDER - 13

to an administratively final previously adjudicated period and is therefore of limited relevance[.]" Tr. 29. *See, e.g.*, *Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance.") (citation omitted).

Because the ALJ gave valid reasons, supported by substantial evidence, to discount the opinion, the Court need not address the balance of the ALJ's remaining reasons for discounting the opinion. Any inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle*, 533 F.3d at 1162.

**B. Plaintiff's Testimony**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 8 at 8-11. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

ORDER - 14

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other

ORDER - 15

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ indicated, among other things, Plaintiff "testified that he was unable to work due to medication side effects to include severe tremors; anxiety with panic attacks; difficulty interacting with others to include family members; irritability toward others; difficulty with activities of daily living; and suicidal thoughts." Tr. 26-27.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 27.

Among other reasons, the ALJ discounted Plaintiff's testimony as inconsistent with the medical evidence.  Tr. 27.  Paralleling the reasoning provided to discount the medical opinions discussed above, the ALJ found that "the severity and frequency of [Plaintiff's] reported mental symptoms is not corroborated by the often normal findings and observations during routine mental health appointments to include a frequently normal mood and affect; normal thought process with full orientation; intact cognition with normal memory and concentration; and normal

ORDER - 16

behavior and functioning." Tr. 27. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161 (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)). And as discussed above, substantial evidence supports this finding. As noted in detail above, Plaintiff's treatment notes reflect largely normal findings with respect to Plaintiff's attention span and concentration, cognition, thought process, memory, and concentration. The ALJ thus reasonably found the medical evidence was inconsistent with Plaintiff's testimony that, among other things, "his conditions affect his memory, understanding, [and] concentration … and that he is easily confused." Tr. 26.

Because the ALJ gave a valid reason, supported by substantial evidence, to discount Plaintiff's testimony, the Court need not address the balance of the ALJ's remaining reasons for discounting Plaintiff's testimony. Any inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle*, 533 F.3d at 1162.

**C. Lay Witness Evidence**

Plaintiff argues the ALJ erred by discounting the opinion of his partner. ECF No. 8 at 18-20; *see* Tr. 467-74. The ALJ discounted the opinion on the same ground used to discount the opinions of Mr. Wenger and Dr. Bowes. Citation. For

ORDER - 17

the reasons discussed above, the ALJ necessarily did not err by discounting the opinion on this ground.

### D. Step Four

Plaintiff argues the ALJ erred by finding, at step four, that Plaintiff could perform past relevant work. ECF No. 8 at 4. Defendant agrees the finding was "not supported." ECF No. 9 at 12. The error is harmless, however, as the ALJ proceeded to step five and did not err in making findings at step five, as discussed below.

### E. Step Five

Plaintiff argues the ALJ erred at step five by relying on an "unreliable" methodology employed by the vocational expert and by "failing to consider contrary job numbers" submitted by Plaintiff after the hearing. ECF No. 8 at 5-6. Neither argument is persuasive.

First, "[i]n accordance with Social Security Act regulations, an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022) (cleaned up). "Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d

ORDER - 18

1141, 1160 (9th Cir. 2020) (citation omitted).  Because Plaintiff "does not identify any evidence undermining the vocational expert's testimony," *id*., the Court rejects Plaintiff's first argument.

Second, Ninth Circuit precedent forecloses Plaintiff's argument that the ALJ erred by "refusing to consider claimant-supplied probative and significant evidence showing the job numbers [provided by the VE] were inadequate."  ECF No. 8 at 8.  In *Kilpatrick v. Kijakazii*, the Ninth Circuit declined to mandate a "categorical obligation" for ALJs to "consider the conflicting information about job numbers and resolve any conflicts."  35 F.4th 1187, 1193 (9th Cir. 2022).  *Kilpatrick* clarified that while "an ALJ may not ignore significant probative evidence that bears on the disability analysis," competing job numbers are not *per se* significant probative evidence.  *Id*.

As in *Kilpatrick*, Plaintiff's counsel submitted competing job numbers to the ALJ after the hearing.  Tr. 38-47.  Yet "[Plaintiff's] attorney did not replicate the VE's same methodology.  It is thus not surprising that [Plaintiff's] different approach led to different results.  And there is no basis to conclude that these results qualified as significant probative evidence that the ALJ was required specifically to address."  *Kilpatrick*, 35 F.4th at 1194.  As Defendant correctly argues, *see* ECF No. 9 at 12 (arguing Plaintiff's attorney "provides no evidence that his alternative methods used to find job numbers are more reliable than the

ORDER - 19

expert's), Plaintiff's attorney has "no identified expertise in calculating job figures in the national economy." *Kilpatrick*, 35 F.4th at 1194.

The ALJ thus did not err at step five.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

2. Defendant's Brief, **ECF No. 9**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 22, 2025.

<u>  *s/Mary K. Dimke*  </u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 20